## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### Flippo v. Commonwealth.

#### January 24, 1918.

1. CRUELTY TO CHILDREN—*Evidence Insufficient to Support Verdict.*— In the instant case defendant was tried and convicted and judgment awarded against him for a fine of $50 for unlawfully overworking and cruelly treating a boy thirteen years old, who was under his control. The boy was under the care of the superintendent of the Children's Home Society of Virginia, who testified that he was incorrigible and that he had put him under the care of defendant about four years previous to defendant's conviction, and during that time he had much improved in appearance, mental development and behavior; and that the boy was much opposed to leaving defendant. The boy himself testified that accused was never cruel to him and that he did not want to leave him. The chief witness against defendant, in whose testimony another witness concurred, did not testify to any cruel act of defendant, his testimony merely consisting of what the boy had told him. These statements of the boy were repeated to defendant by this witness and he either denied them or gave satisfactory explanations of them. The evidence as to overworking the boy was very slight.

   *Held:* That the evidence, though considered as on a demurrer thereto by defendant, was not sufficient to sustain the verdict.

2. CONFESSIONS—*Hearsay Evidence.*—Upon the trial of defendant for cruelty to a boy under his control, a witness for the Commonwealth testified to statements made by the boy to him, which he had repeated to defendant, who had either given satisfactory explanations of them or denied them.

   *Held:* That such testimony was purely hearsay and did not amount to a confession by defendant.

3. CRUELTY TO CHILDREN—*Boy Placed with Farmer by Superintendent of Children's Home.*—Where a boy was placed by the superintendent of the Children's Home Society of Virginia, in whose care he was, with a farmer to bring up, if his conduct was such as to require reasonable and moderate correction for his welfare, it was the right and duty of the farmer to administer it.

Error to a judgment of the Circuit Court of Henrico county.

*Reversed.*

The opinion states the case.

*Geo. P. Haw,* for the plaintiff in error.

*Attorney-General Jno. Garland Pollard, Assistant Attorney-General J. D. Hank, Jr.,* and *Leon M. Bazile,* for the Commonwealth.

BURKS, J., delivered the opinion of the court.

W. F. Flippo, the plaintiff in error, was tried and convicted by a justice of the peace on a warrant charging, "that within the last twelve months, at said county, W. F. Flippo did unlawfully overwork and cruelly treat a child, Carl Bice, thirteen years old, who was under his control." The justice imposed upon him a fine of fifty dollars, and, on appeal to the circuit court, a new trial was had and he was again convicted and judgment was awarded against him for a fine of fifty dollars. To that judgment this writ of error was awarded.

The Commonwealth having waived its objection to the bill of exceptions in this case, the only assignment of error which need be considered is that the verdict was contrary to the law and the evidence.

The entire evidence in the case, as certified by the trial court, was a follows:

"Strang, a witness for the Commonwealth, testified as follows: That hearing that W. F. Flippo who was farming on the Varina farm, in Henrico county, was mistreating a boy named Carl Bice, who lived with him, he made inquiries in the neighborhood and then conferred with Sheriff

Sydnor and they went together to Varina to investigate the matter and talked with the boy and Flippo. That the boy said he was thirteen years of age and had been living with Flippo four years. That in March of this year Flippo made him plough with a three-horse team while he, Flippo, ploughed with a two-horse team; that his team stopped and refused to go on and Flippo came to him and, using the whip with which he, Flippo, was driving, his team, he whipped the boy's team and started them *doing* and, as they went off, Flippo cut the whip behind him and cut the boy on his legs and brought blood. This statement was made in the presence of Flippo who, thereupon, admitted that it was true, but stated that he did not intend to do it. Strang also said the boy stated that Flippo struck him with his fist on his head once. Flippo admitted this, but denied that it happened on the same day he struck the boy with the whip, and claimed that he struck the boy with his hand and not with his fist. The boy stated, and Flippo admitted, that the boy was struck on the head about two weeks before being interviewed by the officers. Strang further testified that at the time he talked with Flippo and the boy, the boy had a bump on his head, and stated that it was caused by Flippo striking him with his fist; but that Flippo claimed he struck the boy only with his open hand. Strang further testified that the boy asked Sydnor and himself to take him away, but they did not, at that time, do this, but left him with Flippo, with directions not to mistreat him in any way and that the boy was not taken away until Flippo was convicted by the justice of the peace.

"W. W. Sydnor, another witness of the Commonwealth, testified that he went with Strang to Varina, and talked with Flippo and the boy and substantiated Strang in all of the above testimony.

"Jake Hayes, another witness, a colored man, testified that last April he saw the boy driving a harrow over plowed

land, that he was barefooted and limping and he asked him what was the matter with him, and he said the bottom of his feet were sore. That he, Hayes, was about fifty yards off and could not see the condition of his feet. That in March he saw Flippo strike the boy with the whip when he was ploughing, that he was not very near him.

"J. A. Loving, another witness for the Commonwealth, testified that in March last, there was a snow that covered the ground. That Flippo was away visiting his brother who lived on the same farm about a mile distant, and that Carl was left alone at the place and had to feed all the teams and stock, consisting of four or five horses and mules and two or three cows; that the feed and teams and cattle were all under shelter.

"Jessie Johnson, a colored man, and a witness for the Commonwealth, testified: 'Was with Jack Hay and saw boy harrowing and he was limping, he did not see or examine boy's feet nor did Hay.' "

The witnesses for the accused testified as follows:

"Dr. Maybee, superintendent Children's Home Society of Virginia, testified: Carl Bice was under his care and he put him out at one place and he ran away. That about four years ago he put him with W. F. Flippo who was then living at Victoria, Virginia. That Carl was incorrigible and was not neat and did not care much for his person. That Flippo has several times reported to him Carl's misbehavior. That Carl has improved very much in his appearance and his mental developments and his behavior. That Carl was much opposed to leaving Mr. Flippo. That he, Maybee, was away from the city when this matter was before the justice; on his return he went to Flippo with ———— Strang, and the boy was so much opposed to leaving that he had to use force to take him away. That he found another home for Carl with a family near Staunton, but Carl ran away and went back to Flippo and Flippo wrote him,

Maybee, and then Maybee allowed the boy to remain with Flippo and he is there now.

"The accused testified: The boy had been with him four years. That when he came there he was very filthy and had very bad habits and was very unmanageable and gave him a good deal of trouble. That he had done the best with him he could, had cared for him, and had been kind in his treatment. He had found it necessary at times to discipline him, but had never been cruel or unkind to him. That several times he thought of returning him to the home and wrote Dr. Maybee of his behavior. That his wife taught him sometimes and some years he sent him to the public school; that he attended school or was taught by his wife every session. That he never did strike him with his fist; that once in his chamber he shoved him with his hand and the boy tripped over something and fell against the door, striking his head, which made a slight bruise on his forehead. That at the time the boy was limping while harrowing, barefooted, he had more than one pair of shoes and left them off of his own accord. That he never struck him with an ear of corn in anger on any occasion. That in March last when the snow came he was at his brother's about a mile away and remained there only one day. That the boy did not suffer any. That the time he is said to have cut the boy had whipped the team to make them go and as they moved off from him he continued to cut and crack the whip behind the team; that he did not intend to cut the boy, though he might have cut him once if at all. That when Strang and Sydnor said he had struck him and drawn blood he said, 'If Carl says so he ought to know, but I did not know it, and did not intend it.' That he did not admit that he had done it. That the three-horse plow in the land he was plowing was not very hard to handle as the rows were long and the land in good condition and the plow needed very little attention except in turning at the ends, and then

the horses dragged it around. That when he left the boy at Christmas he made all necessary provision for his comfort and 'phoned Mrs. Canfield to ask Mr. Canfield to look after him. That the boy has greatly improved in every respect since he has had him, and is very fond of him, Flippo, and his wife. That when Sydnor and Strang proposed to take him away, he cried and begged not to be carried away. That at the time he was lame it was from dew galls. That it is not cruel to have a boy thirteen years old to drive a harrow, run a single cultivator or run a three-horse plow, that he had done such work and even drove a four-horse wagon before he was as old as that. That Carl preferred that work to working around the house.

"Mrs. J. E. Flippo, wife of the accused, testified that her husband had always been kind to the boy. That the boy had greatly improved, since he came to them. That her husband did not strike him with his fist the time alleged nor at any time. That he had shoes at all times and not compelled to go bare-footed and was not overworked.

"E. J. Flippo, father of accused, testified that the accused is of kindly temper and disposition and never was cruel and unkind to the boy. That while they were at Victoria, saw boy daily. The boy needed restraint and disciplining. The accused is good tempered and kindly and not cruel. He and all of his sons did as hard work as this boy before they were as old as he is, and that it is not cruel to have such work done by a thirteen year old boy.

"Virgie Long, brother-in-law of accused; J. Long, father-in-law, and F. Flippo and Ellis Flippo, brothers of accused, said that Carl did and is said to have done the things he is accused of, and was not cruel. That they did similar work before they were as old as he, and that accused was not cruel to the boy, that they saw a good deal of them.

"Carl Bice, the boy who it is charged was overworked and cruelly treated, testified accused never was cruel to him.

That when accused cut him with whip and drew blood he did not intend to cut him and it did not hurt him very much. That the time he was harrowing bare-footed he had shoes, but preferred to go bare-footed. That his feet were sore from dew galls. That accused never struck him with his fist or an ear of corn, and never punished him except when he should have done so, that accused was never cruel or unkind to him. That he left the place near Staunton and came home to Mr. Flippo and did not want to leave there. That he did not tell Strang that accused struck him with his fist and that he never struck him with an ear of corn."

The evidence, though considered as on a demurrer thereto by Flippo, is not sufficient to sustain the verdict. The treatment accorded to that incorrigible boy by Flippo cannot be said to have been cruel, nor does the evidence show that he was overworked. The chief witness against the accused was the witness Strang, in whose testimony the sheriff of Henrico county concurs. Strang does not testify to any act done by Flippo. His testimony was pure hearsay, consisting of what the boy told him, and could not be used against the accused except to the extent that it amounted to a confession. Strang repeated the statements of the boy to Flippo, and he either denied or gave a satisfactory explanation of each of them. Such statements are not confessions. *Jackson* v. *Commonwealth* (Pearl Bryan Case), 100 Ky. 239, 33 S. W. 422, 1091, 66 Am. St. Rep. 336. The explanations of Flippo are in entire harmony with his testimony at the trial, and are not contradicted by any evidence on behalf of the prosecution. The testimony of Dr. Maybee and of other witnesses for the defense does not conflict with that given for the prosecution, though, in some of its aspects, it is explanatory thereof. If this boy was overworked and cruelly treated by Flippo, it is very strange that he should have been so opposed to leaving Flippo that it was necessary "to use force to take him away," and that

after he was placed in another home he should have run away and returned to Flippo. It is hardly less strange that Dr. Maybee, whose duty it was to see that he was provided with a proper home, should have permitted him to remain with Flippo, and that he should be now, with Dr. Maybee's consent and approval, there and "not want to leave there," while the Commonwealth is asking this court to affirm a judgment of conviction against Flippo for overworking and cruelly treating him. The boy was taken into Flippo's family and rightfully put to work. That, at times, he needed correction and received it, we do not doubt. But that he was cruelly treated or overworked is not made to appear from the evidence. Flippo was training the boy along useful lines in the station of life that he would probably have to occupy in the future, and he was improving under his treatment. If his conduct was such as to require reasonable and moderate correction for his welfare, it was the right and duty of Flippo to administer it. The evidence does not support the verdict found by the jury, and the judgment entered thereon must, therefore, be reversed.

*Reversed.*